UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSEPH BERRY,

                        Petitioner,

      -against-

SUPERINTENDENT ROBERT K. WOODS,

                        Respondent.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

06-cv-4849 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner pro se Joseph Berry ("Petitioner") brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition (Docket Entry #1).) Petitioner challenges his conviction in New York Supreme Court, Queens County for Robbery in the Second Degree, Robbery in the Third Degree, and Grand Larceny in the Fourth Degree.

Petitioner raises several claims, among them a claim that his conviction should be reversed because the prosecutor violated Batson v. Kentucky, 476 U.S. 79 (1986), by exercising one of his peremptory challenges on the basis of race. For ease of understanding the factual and procedural presentation of this claim, the three-part burden shifting framework established in Batson is described below, as quoted from the Second Circuit's most recent comprehensive treatment of this issue in Messiah v. Duncan, 435 F.3d 186, 194 (2d Cir. 2006):

> In Batson, the Supreme Court fashioned a three-part burden-shifting framework that trial courts are to employ when ascertaining whether a particular peremptory strike of a jury panelist is based on an impermissible discriminatory motive in violation of the Equal Protection Clause of the Fourteenth Amendment. Initially, upon the assertion of an objection that a peremptory strike has been exercised in an unlawfully discriminatory manner, the movant must make a prima facie showing of circumstances that generate an inference that the relevant panelist was stricken on improper grounds. An oft-used method for such a showing is the description or discernment of a "pattern" of strikes against panelists who are members of particular protected groups.

1

If the trial court is satisfied that the movant has made the requisite prima facie showing, the non-movant must then proffer a race-neutral explanation for striking the panelist. This race-neutral explanation need not be persuasive, or even plausible for the non-movant to meet his obligation at step two of the Batson procedure and thereby advance the inquiry to the third step.

Once the non-movant has proffered his race-neutral explanation, the trial court must then determine whether the movant has satisfied his burden of proving that the relevant strike was exercised for discriminatory reasons. This third step requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances.

Throughout the Batson procedure, the burden of proving that a strike was exercised on an impermissible discriminatory ground remains with the movant. The persuasiveness of the prosecutor's race-neutral explanation only becomes relevant at the third Batson step when the trial court must determine whether the movant has carried his burden of proving purposeful discrimination. Ordinarily, at step three, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.

Messiah, 435 F.3d at 194-95 (internal citations and quotation marks omitted).

For the reasons set forth below, because Petitioner's claims, including his Batson claim, lack merit, the Petition is DENIED.

I. **Background**

On September 14, 1999, around 8 p.m., Jennifer Ghaley was walking down Union Turnpike on her way back from the gym. (Trial Tr. 453-54.) As she passed 118-18 Union Turnpike, she noticed a small grey car in front of her, pointed in her direction. (Id. at 454-45.) As she passed the car, she looked inside and saw two men talking. (Id. at 457.) The driver was talking to the passenger and looking at her. (Id..) She was able to get a good look at the driver, whom she identified during trial as Petitioner. (Id. at 457, 460-61.)

Ghaley kept on walking. (Id. at 458.) After she had walked fifty feet, she was pushed onto the sidewalk by a man who snatched her gym bag, which contained clothes, credit cards, and money. (Id. at 458, 467-68.) Ghaley got up to chase the man, who then jumped into the passenger side of the small grey car and drove off. (Id. at 459.)

The next day, Detective Paul Heider was near the South Jamaica housing projects, looking for a small grey car with blue Delaware or Connecticut plates bearing the number 917565 or 917365. (Id. at 503.) Detective Heider spotted the car and tried to get it to pull over, but the driver did not stop. (Id. at 505-06.) After a two-mile low-speed chase, the car pulled over and Petitioner, the driver, was arrested. (Id. at 506.) A lineup was arranged, at which Ghaley identified Petitioner as the driver of the car in which her attacker had fled. (Id. at 478-79.)

During the second round of jury selection, after the trial judge questioned the jurors, the prosecutor, without conducting any questioning, used a peremptory challenge against James Williams, an African-American member of the venire. (Id. at 223.) The judge's questioning of Williams had revealed that he was a construction worker who was near retirement age. (Id. at 190.) Petitioner's counsel made a Batson challenge, arguing that Williams was the only African-American in the two panels that had been considered thus far, and that there was no other reason that might lead to the prosecutor's exercise of a peremptory challenge against him. (Id. at 224.) The prosecutor argued in opposition that Williams was not the only African-American member of the panel, and that he had not exercised a challenge against Belvery Bryan, the other African-American on the panel. (Id. at 229.) The trial judge denied the request of Petitioner's counsel to require the prosecutor to proffer a race-neutral explanation for his peremptory challenge. (Id. at 230.)

At trial, the evidence described above was presented to the jurors, who found Petitioner guilty of all three counts of the indictment. (Id. at 634-35.) On October 25, 2000 Petitioner was sentenced to concurrent sentences of eight years for the count of Robbery in the Second Degree, three-and-a-half to seven years for the count of Robbery in the Third Degree, and two to four

years for the count of Grand Larceny in the Fourth Degree. (Sentencing Tr. 21.) The website of the New York State Department of Correctional Services reveals that Petitioner was released from Clinton Correctional Facility on November 9, 2007.

## II. Procedural History

In his appeal to the Appellate Division, Second Department, Petitioner argued that the trial court erred in failing to require the prosecutor to proffer a race-neutral explanation for his peremptory challenge of Williams. (Brief for Defendant-Appellant 9-16.) The Appellate Division agreed with Petitioner and remitted the matter to the trial court "to afford the prosecutor an opportunity to offer race-neutral reasons for the challenge." People v. Berry, 302 A.D.2d 536, 536 (N.Y. App. Div. 2d Dep't 2003).

Before the trial court, the prosecutor explained that he exercised a peremptory challenge against Williams for two reasons. First, Williams was a construction worker, and during his conversations with the police detective involved in Petitioner's case, the prosecutor had learned that Petitioner was also a construction worker. Second, Williams appeared to be approximately the same age as Petitioner and nearing retirement. Based on these two similarities between Williams and Petitioner, the prosecutor was concerned that Williams would inappropriately sympathize with Petitioner and so he challenged him. (Affidavit of Allen Bode ¶ 3.)

Petitioner argued in response that these reasons were pretextual, because 1) neither of these reasons had any relation to the facts of the robbery; 2) the prosecutor asked no questions of Williams to determine whether his fear of undue sympathy had any basis; 3) the prosecutor did not challenge other jurors similarly situated to Williams; and 4) the prosecutor's two reasons were "intuitive" and not based on "hard data." Specifically, Petitioner argued that two non-African-American jurors, whom the prosecutor did not challenge, were involved in construction,

4

one as a sheet metal worker and the other as a member of Steamfitters Local 638. Moreover, Williams' primary occupation was not construction but long-distance truck driving, and Petitioner argued that Williams appeared to have been at least a decade older than Petitioner. Additionally, another male juror, whom the prosecutor also did not challenge, had worked for a trucking company, just like Williams. (Petitioner's May 20, 2003 Memorandum of Law 10-16.)

After a hearing, the trial court found in a report to the Appellate Division that Petitioner had not met his burden to show that the prosecutor's proferred reason was pretextual. The Petitioner had not met his burden to show that any non-African-American jurors were both nearing retirement and in construction-related fields, and he had not shown that the prosecutor lacked a good faith belief that Petitioner was involved in construction and of a similar age to Williams. Moreover, the court found that the fact that the prosecutor did not challenge the other African-American juror lent credence to his finding that the Petitioner had not met his burden. In sum, the court found that the two proferred reasons were plausible and credible and therefore that Petitioner had not met his burden to show by a preponderance of the evidence that they were mere pretext. (Sept. 8, 2003 Report 9-18.)

Upon receiving the trial court's Report, the Appellate Division affirmed the judgment of conviction. People v. Berry, 10 A.D.3d 729 (N.Y. App. Div. 2d Dep't 2004). Petitioner was denied leave to appeal to the Court of Appeals on November 23, 2004. People v. Berry, 3 N.Y.3d 755 (2004).

On January 10, 2005, Petitioner moved to vacate his judgment of conviction. Petitioner raised various Fourth and Fourteenth Amendment claims, including that his arrest was illegal and that the lineup, which was the fruit of that arrest, should have been suppressed. This motion was denied on March 15, 2005 as procedurally barred, because Petitioner's claims were on-the-record

claims and so should have been raised on Petitioner's direct appeal. (Mar. 15, 2005 Memorandum 2-3;) see N.Y. Crim. Proc. Law § 440.10[2][c]. On August 10, 2005, the Appellate Division denied Petitioner's request for leave to appeal the trial court's order. (Slip. Op., People v. Berry, Indictment No. 2644/99 (App. Div. 2d Dep't Aug. 10, 2005).

On September 12, 2005, Petitioner filed an application for a writ of error coram nobis, in which he claimed that he was deprived of the effective assistance of appellate counsel because counsel failed to argue that 1) the evidence presented at trial was insufficient to sustain the verdict of guilty; 2) the lineup was unduly suggestive; and 3) the lineup should have been suppressed because of the victim's failure to give an independent description of the perpetrator prior to the lineup. Petitioner's application was denied on the merits by the Appellate Division on December 12, 2005. People v. Berry, 24 A.D.3d 565 (N.Y. App. Div. 2d Dep't 2005). Leave to appeal was denied by the Court of Appeals on June 26, 2006. People v. Berry, 7 N.Y.3d 752 (2006).

## III. The Petition

The Petition was timely filed on August 28, 2006. In it the Petitioner raises the following claims: 1) the prosecutor violated Batson by peremptorily striking Williams; 2) he was arrested without probable cause, and thus the identification of him by Ghaley should be suppressed as fruit of the poisonous tree; 3) the lineup procedures were impermissibly suggestive; 4) false evidence was disclosed to Petitioner's counsel; 5) Petitioner's appellate attorney omitted meritorious claims, including that the police line-up was impermissibly suggestive, that the evidence was insufficient to sustain the verdict, and that the testimony at trial conflicted with the documentary evidence.

6

The court will first consider Petitioner's first and fifth claims. It will then proceed to consider Petitioner's second, third, and fourth claims which, as discussed below, are procedurally defaulted.

A.   Petitioner's <u>Batson</u> Claim

Petitioner faces a heavy burden in disturbing the trial court's determination that he had not shown at trial, by a preponderance of the evidence, that Williams was stricken by the prosecutor for discriminatory reasons. Specifically, Petitioner must show by "clear and convincing evidence" that the trial court's factual finding was incorrect. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005).

Petitioner has not done so. For one, he has not presented any evidence showing a discriminatory pattern in the peremptory strikes exercised by the prosecutor in his case or by prosecutors in the Queens County District Attorney's Office. In fact, he has not presented evidence of any behavior, like disparate questioning of jurors, that might suggest a discriminatory motive, other than the strike of Williams. <u>See</u> <u>id.</u> at 240-266 (relying on such evidence in finding a trial court's factual finding to be incorrect). Moreover, the Second Circuit has specifically held that the fear that the occupation of a jury member might engender inappropriate sympathy for the defendant is an appropriate motive for a peremptory strike. <u>Messiah</u>, 435 F.3d at 200 (finding nothing inappropriate about striking a social service professional who might have sympathy for the defendant). Here, although other panelists also had occupations similar to that of Petitioner, Petitioner has not presented any evidence sufficient to show that the prosecutor did not have a good faith belief that no other juror was *both* close in age to Petitioner and similarly occupied. Petitioner has thus not met his heavy burden to disturb the trial court's denial of his <u>Batson</u> claim.

7

B.  Petitioner's Ineffective Assistance of Appellate Counsel Claim

Petitioner argues that his appellate attorney omitted meritorious claims, including that the police line-up was impermissibly suggestive, that the evidence was insufficient to sustain the verdict, and that the testimony at trial conflicted with the documentary evidence.

To succeed on a claim of ineffective assistance of appellate counsel, Petitioner must show that there is a reasonable probability that an appeal raising these issues would have succeeded. See Flores v. Demskie, 215 F.3d 293, 304 (2d Cir. 2000). Petitioner cannot make this showing.

First, the evidence was clearly sufficient to sustain the verdict, as Ghaley's testimony was sufficient to establish that Petitioner intended to play the role of getaway driver for the man who threw her to the sidewalk and robbed her. Petitioner's argument in his Petition that Ghaley was not credible, and that her testimony at trial contradicted the documentary evidence, is irrelevant, as the prosecutor need not present a case free of internal contradictions; on a review of a conviction for the sufficiency of the evidence, any issue regarding credibility must be resolved in the prosecution's favor. See United States v. Jespersen, 65 F.3d 993, 998 (2d Cir. 1995).

Second, the alleged problems with Petitioner's identification by Ghaley would not have presented a serious claim on appeal. Petitioner had a very weak claim that the lineup was impermissibly suggestive. Petitioner argues that the rest of the lineup participants were 25 years old, because Ghaley initially told the police that the driver of the getaway car was 25 years old, and so he stood out from the other participants. Even if this were so, the lineup was certainly not impermissibly suggestive as to Petitioner, for "the principal question in determining suggestiveness is whether the appearance of the accused, *matching descriptions given by the witness*," so stood out from the other participants as to suggest to the witness that the suspect was the culprit. United States v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (emphasis added).

8

Here, by contrast, the appearance of the accused, unlike the rest of the participants in the lineup, *varied* from the description given by the victim, and so Petitioner stood out from the lineup in a way that made him less, not more, likely to be picked by Ghaley.[1]

In sum, a review of the record reveals that Petitioner's appellate attorneys provided him with effective and vigorous assistance, identifying an issue – the alleged Batson violation – with respect to which the trial court had erred, and obtaining a remand to the district court for further proceedings on that issue. Although the appeal was ultimately unsuccessful, this does not mean that the assistance Petitioner received was ineffective. Petitioner's claim of ineffective assistance of appellate counsel is denied.

C. Petitioner's Procedurally Defaulted Claims

Federal courts "do not review arguments procedurally defaulted in state court if the finding of default constitutes an 'independent and adequate state ground' for the state court's decision." Brown v. Greiner, 409 F.3d 523, 532 (2d Cir. 2005). This rule applies when a "state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (internal citation omitted).

Procedural default may be avoided when a petitioner shows (1) cause for the default and prejudice or (2) "that failure to consider the claim will result in miscarriage of justice, i.e., the petitioner is actually innocent." Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003); see Marrero Pichardo v. Ashcroft, 374 F.3d 46, 53-54 (2d Cir. 2004) (miscarriage of justice would occur as a

---

[1] There was no requirement, as Petitioner argues, for the prosecution to establish that Ghaley's identification of him was independently reliable. Such a showing is required only if the lineup evidence is suppressed either as fruit of the poisonous tree or because it is impermissibly suggestive. See Murray v. United States, 487 U.S. 533 (1988); United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990). Here, the police had probable cause to arrest Petitioner, because he was driving a car that had been identified as involved in prior robberies, and so the lineup was not fruit of the poisonous tree. Therefore, because the lineup was not impermissibly suggestive, there was no need to establish the independent reliability of Ghaley's identification.

9

result of procedural default of claim in motion challenging removal order that was "virtually certain to succeed if considered on appeal").

Here, the trial court expressly found that Petitioner had procedurally defaulted the second, third, and fourth grounds raised in his Petition by failing to raise them in his direct appeal. (See Mar. 15, 2005 Memorandum 2-3;) N.Y. Crim. Proc. Law § 440.10[2][c]. The order denying leave to appeal the trial court's order, as it did not consider the merits of Petitioner's claims, left intact the trial court's finding of procedural default. See Ylst v. Nunnemaker, 501 U.S. 797 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect – which simply 'looks through' them to the last reasoned decision – most nearly reflects the role they are ordinarily intended to play").

To avoid procedural default, Petitioner must either show that he is actually innocent, or that he had cause for the default and that the error complained of caused Petitioner prejudice. Petitioner cannot satisfy either prong of this test. Petitioner's argument that the ineffective assistance of appellate counsel excuses his failure to raise these three claims on direct appeal fails because, as discussed above, Petitioner has not succeeded in demonstrating that he received ineffective assistance of appellate counsel. See Murray v. Carrier, 477 U.S. 478, 488-89 (1986) (attorney error that rises to the level of ineffective assistance of counsel can constitute cause that excuses a procedural default).

To establish actual innocence, Petitioner must show that "in the light of all the evidence, it is more likely that not that no reasonable juror would have convicted him." Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003). As Petitioner has presented no new evidence in his Petition, let alone evidence sufficient to disturb the trial jury's reasonable determination that Petitioner was guilty, Petitioner has not established his actual innocence.

Petitioner's procedurally defaulted claims may therefore not be considered by this court.

IV. **Conclusion**

For the reasons stated above, the Petition is DENIED in its entirety. A certificate of appealability shall not issue. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
December 27, 2008

s/Nicholas G. Garaufis

/NICHOLAS G. GARAUFIS
United States District Judge